UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT



No. 96-1554

IONICS, INC.,
Plaintiff - Appellee,

v.

ELMWOOD SENSORS, INC.,
Defendant - Appellant.



ERRATA SHEET

The opinion of this court issued on April 8, 1997 is amended
as follows:

Page 9, line 15 change "Roto-Lith's" to "Bartlett's"

Page 12, line 8 insert period between "(1)" and footnote "5"

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 96-1554

IONICS, INC.,

Plaintiff - Appellee,

v.

ELMWOOD SENSORS, INC.,

Defendant - Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker,* Senior U.S. District Judge] 



Before

Torruella, Chief Judge, 

Bownes, Senior Circuit Judge, 

and Stahl, Circuit Judge. 



Daryl J. Lapp, with whom Thane D. Scott, Stephen L. Coco and 
Palmer & Dodge LLP were on brief for appellant. 
Tina M. Traficanti, with whom Anthony M. Doniger and 
Sugarman, Rogers, Barshak & Cohen, P.C. were on brief for 
appellee.



April 8, 1997


 

* Of the Southern District of New York, sitting by designation.

TORRUELLA, Chief Judge. Ionics, Inc. ("Ionics") TORRUELLA, Chief Judge. 

purchased thermostats from Elmwood Sensors, Inc. ("Elmwood") for

installation in water dispensers manufactured by the former.

Several of the dispensers subsequently caused fires which

allegedly resulted from defects in the sensors. Ionics filed

suit against Elmwood in order to recover costs incurred in the

wake of the fires. Before trial, the district court denied

Elmwood's motion for partial summary judgment. The District

Court of Massachusetts subsequently certified to this court "the

question whether, in the circumstances of this case, 2-207 of

M.G.L. c. 106 has been properly applied." Order of the district

court, November 6, 1995.

I. Standard of Review I. Standard of Review

We review the grant or denial of summary judgment de 

novo. See Borschow Hosp. & Medical Supplies v. C sar Castillo, 

Inc., 96 F.3d 10, 14 (1st Cir. 1996). 

II. Background II. Background

The facts of the case are not in dispute. Elmwood

manufactures and sells thermostats. Ionics makes hot and cold

water dispensers, which it leases to its customers. On three

separate occasions, Ionics purchased thermostats from Elmwood for

use in its water dispensers.1 Every time Ionics made a purchase

of thermostats from Elmwood, it sent the latter a purchase order

form which contained, in small type, various "conditions." Of

the20 conditions onthe order form,two areof particular relevance:
 

1 Orders were placed in March, June, and September 1990.

-2-

18. REMEDIES -- The remedies provided
Buyer herein shall be cumulative, and in
addition to any other remedies provided
by law or equity. A waiver of a breach
of any provision hereof shall not
constitute a waiver of any other breach.
The laws of the state shown in Buyer's
address printed on the masthead of this
order shall apply in the construction
hereof.

19. ACCEPTANCE -- Acceptance by the
Seller of this order shall be upon the
terms and conditions set forth in items 1
to 17 inclusive, and elsewhere in this
order. Said order can be so accepted
only on the exact terms herein and set
forth. No terms which are in any manner
additional to or different from those
herein set forth shall become a part of,
alter or in any way control the terms and
conditions herein set forth.

Near the time when Ionics placed its first order, it

sent Elmwood a letter that it sends to all of its new suppliers.

The letter states, in part:

The information preprinted, written
and/or typed on our purchase order is
especially important to us. Should you
take exception to this information,
please clearly express any reservations
to us in writing. If you do not, we will
assume that you have agreed to the
specified terms and that you will fulfill
your obligations according to our
purchase order. If necessary, we will
change your invoice and pay your invoice
according to our purchase order.

Following receipt of each order, Elmwood prepared and

sent an "Acknowledgment" form containing the following language

in small type:

THIS WILL ACKNOWLEDGE RECEIPT OF BUYER'S
ORDER AND STATE SELLER'S WILLINGNESS TO
SELL THE GOODS ORDERED BUT ONLY UPON THE
TERMS AND CONDITIONS SET FORTH HEREIN AND

-3-

ON THE REVERSE SIDE HEREOF AS A
COUNTEROFFER. BUYER SHALL BE DEEMED TO
HAVE ACCEPTED SUCH COUNTEROFFER UNLESS IT
IS REJECTED IN WRITING WITHIN TEN (10)
DAYS OF THE RECEIPT HEREOF, AND ALL
SUBSEQUENT ACTION SHALL BE PURSUANT TO
THE TERMS AND CONDITIONS OF THIS
COUNTEROFFER ONLY; ANY ADDITIONAL OR
DIFFERENT TERMS ARE HEREBY OBJECTED TO
AND SHALL NOT BE BINDING UPON THE PARTIES
UNLESS SPECIFICALLY AGREED TO IN WRITING
BY SELLER.

Although this passage refers to a "counteroffer," we

wish to emphasize that this language is not controlling. The

form on which the language appears is labelled an

"Acknowledgment" and the language comes under a heading that

reads "Notice of Receipt of Order." The form, taken as a whole,

appears to contemplate an order's confirmation rather than an

order's rejection in the form of a counteroffer.

It is undisputed that the Acknowledgment was received

prior to the arrival of the shipment of goods. Although the

district court, in its ruling on the summary judgment motion,

states that "with each shipment of thermostats, Elmwood included

an Acknowledgment Form," Order of the District Court, August 23,

1995, this statement cannot reasonably be taken as a finding in

support of the claim that the Acknowledgment and the shipment

arrived together. First, in its certification order, the court

states that "[t]he purchaser, after receiving the Acknowledgment, 

accepted delivery of the goods without objection." Order

Pursuant to 28 U.S.C. 1292(b), Nov. 6, 1995 (emphasis added).

This language is clearer and more precise than the previous

statement and suggests that the former was simply a poor choice

-4-

of phrasing. Furthermore, Ionics has not disputed the arrival

time of the Acknowledgment. In its Memorandum in Support of

Defendant's Motion for Partial Summary Judgment Elmwood stated,

under the heading of "Statements of Undisputed Facts," that "for

each of the three orders, Ionics received the Acknowledgment

prior to receiving the shipment of thermostats." Memorandum in

Support of Defendant's Motion for Partial Summary Judgment, at 3.

In its own memorandum, Ionics argued that there existed disputed

issues of material fact, but did not contradict Elmwood's claim

regarding the arrival of the Acknowledgment Form. See 

Plaintiff's Memorandum in Support of its Opposition to

Defendant's Motion for Partial Summary Judgment at 4-10.

Furthermore, in its appellate brief, Ionics does not argue that

the time of arrival of the Acknowledgment Form is in dispute.

Ionics repeats language from the district court's summary

judgment ruling that "with each shipment of thermostats, Elmwood

included an Acknowledgment Form," Appellee's Brief at 7, but does

not argue that the issue is in dispute or confront the language

in Elmwood's brief which states that "[i]t is undisputed that for

each of the three orders, Ionics received the Acknowledgment

prior to receiving the shipment of thermostats." Appellant's

Brief at 6.

As we have noted, the Acknowledgment Form expressed

Elmwood's willingness to sell thermostats on "terms and

conditions" that the Form indicated were listed on the reverse

-5-

side. Among the terms and conditions listed on the back was the

following:

9. WARRANTY
All goods manufactured by Elmwood
Sensors, Inc. are guaranteed to be free
of defects in material and workmanship
for a period of ninety (90) days after
receipt of such goods by Buyer or
eighteen months from the date of
manufacturer [sic] (as evidenced by the
manufacturer's date code), whichever
shall be longer. THERE IS NO IMPLIED
WARRANTY OF MERCHANTABILITY AND NO OTHER
WARRANTY, EXPRESSED OR IMPLIED, EXCEPT
SUCH AS IS EXPRESSLY SET FORTH HEREIN.
SELLER WILL NOT BE LIABLE FOR ANY
GENERAL, CONSEQUENTIAL OR INCIDENTAL
DAMAGES, INCLUDING WITHOUT LIMITATION ANY
DAMAGES FROM LOSS OF PROFITS, FROM ANY
BREACH OF WARRANTY OR FOR NEGLIGENCE,
SELLER'S LIABILITY AND BUYER'S EXCLUSIVE
REMEDY BEING EXPRESSLY LIMITED TO THE
REPAIR OF DEFECTIVE GOODS F.O.B. THE
SHIPPING POINT INDICATED ON THE FACE
HEREOF OR THE REPAYMENT OF THE PURCHASE
PRICE UPON THE RETURN OF THE GOODS OR THE
GRANTING OF A REASONABLE ALLOWANCE ON
ACCOUNT OF ANY DEFECTS, AS SELLER MAY
ELECT.

Neither party disputes that they entered into a valid

contract and neither disputes the quantity of thermostats

purchased, the price paid, or the manner and time of delivery.

The only issue in dispute is the extent of Elmwood's liability.

In summary, Ionics' order included language stating

that the contract would be governed exclusively by the terms

included on the purchase order and that all remedies available

under state law would be available to Ionics. In a subsequent

letter, Ionics added that Elmwood must indicate any objections to

these conditions in writing. Elmwood, in turn, sent Ionics an

-6-

Acknowledgment stating that the contract was governed exclusively

by the terms in the Acknowledgment, and Ionics was given ten days

to reject this "counteroffer." Among the terms included in the

Acknowledgment is a limitation on Elmwood's liability. As the

district court stated, "the terms are diametrically opposed to

each other on the issue of whether all warranties implied by law

were reserved or waived." Order of the District Court, August

23, 1995.

We face, therefore, a battle of the forms. This is

purely a question of law. The dispute turns on whether the

contract is governed by the language after the comma in 2-

207(1) of the Uniform Commercial Code, according to the rule laid

down by this court in Roto-Lith, Ltd. v. F.P. Bartlett & Co., 297 

F.2d 497 (1st Cir. 1962), or whether it is governed by subsection

(3) of the Code provision, as enacted by both Massachusetts,

Mass. Gen. L. ch. 106, 2-207 (1990 and 1996 Supp.), and Rhode

Island, R.I. Gen. Laws 6A-2-207 (1992).2 We find the rule of

Roto-Lith to be in conflict with the purposes of section 2-207 

and, accordingly, we overrule Roto-Lith and find that subsection 

(3) governs the contract.3 Analyzing the case under section 2-
 

There is some uncertainty on the question of whether
Massachusetts or Rhode Island law governs. We need not address
this issue, however, because the two states have adopted versions
of section 2-207 of the Uniform Commercial Code that are
virtually equivalent.

Although panel decisions of this court are ordinarily binding
on newly constituted panels, that rule does not obtain in
instances where, as here, a departure is compelled by controlling
authority (such as the interpreted statute itself). In such
relatively rare instances, we have sometimes chosen to circulate

-7-

207, we conclude that Ionics defeats Elmwood's motion for partial

summary judgment.

III. Legal Analysis III. Legal Analysis

Our analysis begins with the statute. Section 2-207

reads as follows:

2-207. Additional Terms in Acceptance
or Confirmation

(1) A definite and seasonable expression
of acceptance or a written confirmation
which is sent within a reasonable time
operates as an acceptance even though it
states terms additional to or different
from those offered or agreed upon, unless
acceptance is expressly made conditional
on assent to the additional or different
terms.

(2) The additional or different terms
are to be construed as proposals for
addition to the contract. Between
merchants such terms become part of the
contract unless:
(a) the offer expressly limits
acceptance to the terms of the
offer;
(b) they materially alter it; or
(c) notification of objection to
them has already been given or is
given within a reasonable time
after notice of them is received. 

(3) Conduct by both parties which
recognizes the existence of a contract is
 

the proposed overruling opinion to all active members of the
court prior to publication even though the need to overrule
precedent is reasonably clear. See, e.g., Wright v. Park, 5 F.3d 
586, 591 n.7 (1st Cir. 1994); Trailer Marine Transport Corp. v. 
Rivera V zquez, 977 F.2d 1, 9 n.5 (1st Cir. 1992). This 
procedure is, of course, informal, and does not preclude a
suggestion of rehearing en banc on any issue. We have followed
that praxis here and can report that none of the active judges of
this court has objected to the panel's analysis or to its
conclusion that Roto-Lith has outlived its usefulness as circuit 
precedent.

-8-

sufficient to establish a contract for
sale although the writings of the parties
do not otherwise establish a contract.
In such case the terms of the particular
contract consist of those terms on which
the writings of the parties agree,
together with any supplementary terms
incorporated under any other provisions
of this chapter.

Mass. Gen. L. ch. 106, 2-207 (1990 and 1996 Supp.).

In Roto-Lith, Roto-Lith sent a purchase order to 

Bartlett, who responded with an acknowledgment that included

language purporting to limit Bartlett's liability. Roto-Lith did

not object. Roto-Lith, 297 F.2d at 498-99. This court held that 

"a response which states a condition materially altering the

obligation solely to the disadvantage of the offeror is an

'acceptance * * * expressly * * * conditional on assent to the

additional * * * terms.'" Id. at 500. This holding took the 

case outside of section 2-207 by applying the exception after the

comma in subsection (1). The court then reverted to common law

and concluded that Roto-Lith "accepted the goods with knowledge

of the conditions specified in the acknowledgment [and thereby]

became bound." Id. at 500. In other words, the Roto-Lith court 

concluded that the defendant's acceptance was conditional on

assent, by the buyer, to the new terms and, therefore,

constituted a counter offer rather than an acceptance. When

Roto-Lith accepted the goods with knowledge of Bartlett's

conditions, it accepted the counteroffer and Bartlett's terms

governed the contract. Elmwood argues that Roto-Lith governs the 

-9-

instant appeal, implying that the terms of Elmwood's

acknowledgment govern.

Ionics claims that the instant case is distinguishable

because in Roto-Lith "the seller's language limiting warranties 

implied at law was proposed as an addition to, but was not in

conflict with, the explicit terms of the buyer's form. [In the

instant case] the explicit terms of the parties' forms conflict

with and reject each other." Appellee's Brief at 21.

We do not believe that Ionics' position sufficiently

distinguishes Roto-Lith. It would be artificial to enforce 

language that conflicts with background legal rules while

refusing to enforce language that conflicts with the express

terms of the contract. Every contract is assumed to incorporate

the existing legal norms that are in place. It is not required

that every contract explicitly spell out the governing law of the

jurisdiction. Allowing later forms to govern with respect to

deviations from the background rules but not deviations from the

terms in the contract would imply that only the terms in the

contract could be relied upon. Aside from being an artificial

and arbitrary distinction, such a standard would, no doubt, lead

parties to include more of the background rules in their initial

forms, making forms longer and more complicated. Longer forms

would be more difficult and time consuming to read -- implying

that even fewer forms would be read than under the existing

rules. It is the failure of firms to read their forms that has

-10-

brought this case before us, and we do not wish to engender more

of this type of litigation.

Our inquiry, however, is not complete. Having found

that we cannot distinguish this case from Roto-Lith, we turn to 

the Uniform Commercial Code, quoted above. A plain language

reading of section 2-207 suggests that subsection (3) governs the

instant case. Ionics sent an initial offer to which Elmwood

responded with its "Acknowledgment." Thereafter, the conduct of

the parties established the existence of a contract as required

by section 2-207(3).

Furthermore, the case before us is squarely addressed

in comment 6, which states:

6. If no answer is received within a
reasonable time after additional terms
are proposed, it is both fair and
commercially sound to assume that their
inclusion has been assented to. Where
clauses on confirming forms sent by both
parties conflict[,] each party must be
assumed to object to a clause of the
other conflicting with one on the
confirmation sent by himself. As a
result[,] the requirement that there be
notice of objection which is found in
subsection (2) [of 2-207] is satisfied
and the conflicting terms do not become
part of the contract. The contract then
consists of the terms originally
expressly agreed to, terms on which the
confirmations agree, and terms supplied
by this Act.

Mass. Gen. L. ch. 106, 2-207, Uniform Commercial Code Comment

6. This Comment addresses precisely the facts of the instant

case. Any attempt at distinguishing the case before us from

section 2-207 strikes us as disingenuous.

-11-

We are faced, therefore, with a contradiction between a

clear precedent of this court, Roto-Lith, which suggests that the 

language after the comma in subsection (1) governs, and the clear

dictates of the Uniform Commercial Code, which indicate that

subsection (3) governs. It is our view that the two cannot co-

exist and the case at bar offers a graphic illustration of the

conflict. We have, therefore, no choice but to overrule our

previous decision in Roto-Lith, Ltd. v. F.P. Bartlett & Co., 297 

F.2d 497 (1st Cir. 1962). Our decision brings this circuit in

line with the majority view on the subject and puts to rest a

case that has provoked considerable criticism from courts and

commentators and alike.4

We hold, consistent with section 2-207 and Official

Comment 6, that where the terms in two forms are contradictory,

each party is assumed to object to the other party's conflicting

clause. As a result, mere acceptance of the goods by the buyer

is insufficient to infer consent to the seller's terms under the

language of subsection (1).5 Nor do such terms become part of
 

See, e.g., Step-Saver Data Systems, Inc. v. Wyse Technology, 
939 F.2d 91, 101 (3d Cir. 1991); St. Charles Cable TV, Inc. v. 
Eagle Comtronics, Inc., 687 F. Supp. 820, 828 & n.19 (S.D.N.Y. 
1988); Daitom v. Pennwalt Corp., 741 F.2d 1569, 1576-77 (10th 
Cir. 1984); Luria Bros. v. Pietlet Bros. Scrap Iron & Metal, 600 
F.2d 103, 113 (7th Cir. 1979); Dorton v. Collins & Aikman Corp., 
453 F.2d 1161, 1168 & n.5 (6th Cir. 1972); ; James J. White &
Robert S. Summers, 1 Uniform Commercial Code, 1-3, at 12, 16-17
(1995); Murray, Intention over Terms: An Exploration of UCC 2-207
& New Section 60, Restatement of Contracts, 37 Fordham L. Rev.
317, 329 (1969).

See also Official Comment 3 ("If [additional or different 
terms] are such as materially to alter the original bargain, they
will not be included unless expressly agreed to by the other

-12-

the contract under subsection (2) because notification of

objection has been given by the conflicting forms. See 2- 

207(2)(c).

The alternative result, advocated by Elmwood and

consistent with Roto-Lith, would undermine the role of section 2- 

207. Elmwood suggests that "a seller's expressly conditional

acknowledgment constitutes a counteroffer where it materially

alters the terms proposed by the buyer, and the seller's terms

govern the contract between the parties when the buyer accepts

and pays for the goods." Appellant's Brief at 12. Under this

view, section 2-207 would no longer apply to cases in which forms

have been exchanged and subsequent disputes reveal that the forms

are contradictory. That is, the last form would always govern.

The purpose of section 2-207, as stated in Roto-Lith, 

"was to modify the strict principle that a response not precisely

in accordance with the offer was a rejection and a counteroffer."

Roto-Lith, 297 F.2d at 500; see also Dorton v. Collins & Aikman 

Corp., 453 F.2d 1161, 1165-66 (6th Cir. 1972) (stating that 

section 2-207 "was intended to alter the 'ribbon-matching' or

'mirror' rule of common law, under which the terms of an

acceptance or confirmation were required to be identical to the

terms of the offer"). Under the holding advocated by Elmwood,

virtually any response that added to or altered the terms of the

offer would be a rejection and a counteroffer. We do not think

 

party.").

-13-

that such a result is consistent with the intent of section 2-207

and we believe it to be expressly contradicted by Comment 6.

Applied to this case, our holding leads to the

conclusion that the contract is governed by section 2-207(3).

Section 2-207(1) is inapplicable because Elmwood's acknowledgment

is conditional on assent to the additional terms. The additional

terms do not become a part of the contract under section 2-207(2)

because notification of objection to conflicting terms was given

on the order form and because the new terms materially alter

those in the offer. Finally, the conduct of the parties

demonstrates the existence of a contract, as required by section

2-207(3). Thus, section 2-207(3) applies and the terms of the

contract are to be determined in accordance with that subsection.

We conclude, therefore, that section 2-207(3) prevails

and "the terms of the particular contract consist of those terms

on which the writings of the parties agree, together with any

supplementary terms incorporated under any other provisions of

this chapter." Mass. Gen. L. ch. 106, 2-207(3).

The reality of modern commercial dealings, as this case

demonstrates, is that not all participants read their forms. See 

James J. White & Robert S. Summers, Uniform Commercial Code 1-3 

at 6-7 (4th ed. 1995). To uphold Elmwood's view would not only

fly in the face of Official Comment 6 to section 2-207 of the

Uniform Commercial Code, and the overall purpose of that section,

it would also fly in the face of good sense. The sender of the

last form (in the instant case, the seller) could insert

-14-

virtually any conditions it chooses into the contract, including

conditions contrary to those in the initial form. The final

form, therefore, would give its sender the power to re-write the

contract. Under our holding today, we at least ensure that a

party will not be held to terms that are directly contrary to the

terms it has included in its own form. Rather than assuming that

a failure to object to the offeree's conflicting terms indicates

offeror's assent to those terms, we shall make the more

reasonable inference that each party continues to object to the

other's contradictory terms. We think it too much to grant the

second form the power to contradict and override the terms in the

first form.

-15-

IV. Conclusion IV. Conclusion

For the reasons stated herein, the district court's

order denying Elmwood's motion for partial summary judgment is

affirmed and the case is remanded to the district court for affirmed remanded  

further proceedings.

-16-